**Linda FOX, Individually and as next friend of Cary Fox, Appellant,**

v.

**AMERICAN PROPANE, INC., et al., Appellees.**

No. 12113.

Court of Civil Appeals of Texas, Austin.

April 10, 1974.

Dale E. Muller, Austin, for appellant.

Thomas S. Goggan, Charles Morris, Garey & Morris, J. Terry Weeks, Austin, for appellees.

PHILLIPS, Chief Justice.

Appellant brought this suit for damages caused by an alleged conversion of a mobile home. Trial was to a jury which found the fair market value of the mobile home to be $5,695.00, found that the appellees acted in concert and with malice in "moving" the mobile home and assessed exemplary damages against appellees for $7,235.00. Disregarding the jury's findings, the trial court rendered judgment notwithstanding the verdict that appellant take nothing. We affirm this judgment.

Appellant is before this Court on nine points of error which present, essentially, two questions. The first is the question of

whether there was a conversion of the trailer. The second is that of damages.

## I.

Appellant and her husband bought a mobile home in November, 1971, and financed it through the Republic National Bank in Dallas. The mortgage note was for $6,839.75 which appellant and her husband agreed to repay in 120 months at a monthly payment of $114.80. Appellant and her husband paid $200.00 down, made one, or perhaps two, monthly payments then fell in arrears.

Appellant and her husband moved the mobile home onto a lot in a mobile home park operated by appellee Lambert. Rent was payable on a month-to-month basis and was paid through January, 1972. Appellant's husband died sometime in January and appellant moved out of the mobile home and took her small child with her. Appellee Lambert testified that he made daily trips to the home from January 10, 1972, until February 2, 1972 (the date the home was moved), to ascertain the whereabouts of appellant and the status of the mobile home. He testified that the mobile home appeared to be vacant during that period of time. He had been informed that appellant's husband was dead and that appellant was looking for someone to take up payments on the mobile home.

Appellee Daily, who owned the Propane Company, had an $80.00 unpaid bill for propane used by appellant and her husband. He testified that he made inquiries to the Republic National Bank in Dallas concerning the status of the mobile home. He was informed that the bank had a lien against the home, that the payments were in arrears, and that the bank intended to repossess the unit. He informed the bank of his intention to move the mobile home to another location on the same lot and received its permission for the move. The water and gas connections to the trailer were then severed, the electricity un-plugged, the blocking removed, and the trailer was then towed some 70 yards to another part of the same trailer lot. There is no evidence that the appellees locked, fenced, chained or otherwise interfered with the mobile home. Thus, we become faced with the question of whether the act of moving the mobile home as described above constituted a conversion as a matter of law.

In 42 Cornell Law Quarterly, page 168, Professor William L. Prosser in an article entitled, "The Nature of Conversion," cites Fouldes v. Willoughby, 8 M. & W. 540, 151 Eng.Rep. 1153 (Exch.1841), where the plaintiff went on board the defendant's ferryboat, taking with him two horses. The defendant wrongfully refused to carry the horses, and put them on shore. The plaintiff remained on the boat and was conveyed across the river, as a result of which he lost his horses. In an action of Trover, it was held that the mere act of removing the horses from the boat, although it was actionable as a trespass, did not amount to the tort of conversion. Three judges struggled at length with the distinction, all of them endeavoring to express the fundamental idea that a conversion must be some act which denies or defies the plaintiff's right to ownership of his chattel. Baron Alderson seizing upon a word used in the argument of counsel said that it must be "an act inconsistent with the general right of *dominion* which the owner of the chattel has in it."

Professor Prosser then states that "dominion" has haunted the conversion cases ever since. He points out that it is a difficult word which has been at best a negative aid. If the defendant merely takes the plaintiff's horse by the bridle and leads it a few steps, it is certainly to some extent an exercise of dominion, authority, sovereignty or control over the horse, and it is certainly to some extent an act inconsistent with the plaintiff's "general right of dominion" which must include the right not to have his horse interfered with. Yet this illustration was given by Lord Abinger in

*Fouldes,* above, as an example of a mere trespass, not amounting to a conversion.

Subsequent decisions, according to Prosser, have held that if the unauthorized use results in substantial damage to the chattel or the use itself is an important interference with the rights of the plaintiff, there is a conversion. Conversion has been confined, in effect, to those major interferences which are so important, or serious, as to justify the forced judicial sale of the chattel to the defendant which is the distinguishing feature of the action.

In Waisath v. Lack's Stores, Inc., 474 S.W.2d 444 (Tex.1971), the Supreme Court defines conversion as the wrongful exercise of dominion and control over another's property in *denial of* or inconsistent with his rights. Another definition given in that case states ". . . to the *exclusion of* or inconsistent with [his] rights . . . ." (Emphasis added) In applying this test, the court held that thirty pieces of furniture belonging to the plaintiffs and wrongfully transported by defendants to their downtown store where plaintiffs were denied access to the furniture was a conversion. The court also held that where defendant wrongfully used plaintiffs' furniture in an apartment for which defendant was collecting rent was also a conversion.

In Bush v. Lane, 193 Cal.App.2d 376, 293 P.2d 465 (1956), the court held that to establish conversion an *intention or purpose to convert* the goods must be shown in addition to the exercise of ownership over them; or, the owner must be prevented from taking possession of his property.

▇ The facts before us do not fall into the pattern of cases which hold that a conversion has taken place.[1] While appellees

did remove utility connections from the mobile home along with its underblocking, there is no evidence that appellees *denied* or in any way *excluded* appellant from access to the mobile home. Like "leading the horse by the halter" (albeit the tether rope was unloosed), appellees moved the chattel some 70 yards within the mobile home park, undamaged, where appellant had access to it at all times. Neither was any intent nor purpose to convert the goods shown. Appellees' action, at most, was a trespass and nothing more.[2]

## II.

▇ Should we be in error as to the question of conversion, appellant is still precluded from recovery in that she has failed to show any damage. A successful suit for conversion amounts to a forced sale, and a judgment must provide that upon payment of a money judgment the ownership of the property is to vest in the defendants. Shroeder Lumber Co. v. Minerales y Metales, S.A.I., 331 F.2d 135 (5th Cir. 1964). The jury found the fair market value of the mobile home to be $5,695.-00. However, the record discloses that the bank held a mortgage against the unit in excess of this amount. Consequently, appellant has no equity of redemption. In Kennann v. Deats, 258 S.W.2d 145 (Tex. Civ.App.1953, writ ref. n. r. e.), under a similar fact situation, the court held that in conversion cases, compensation for injury is the result to be obtained, and while wrongdoer is not allowed to profit from his own wrongdoing, the same rule should apply to the party allegedly aggrieved. The court observed, ". . . if appellee is paid his $2,000 judgment and the finance company takes the Pontiac automobile for its debt and lien, appellants have had noth-

---

1. Nor is Holland v. Lesesne, 350 S.W.2d 859 (Tex.Civ.App.1961, writ ref. n. r. e.) relied upon by appellants in point. In *Holland* the defendant removed the plaintiff's property and placed it in storage in the defendant's name. The Court held that the plaintiff was not obligated to accept the defendant's offer

to return the property and could elect to sue for conversion.

2. Zaslow v. Kroenert, 29 Cal.2d 541, 176 P.2d 1 (1946); Shea v. Inhabitants of Milford, 145 Mass. 525, 14 N.E. 769 (1888); O. J. Gude Co. v. Farley, 25 Misc. 502, 54 N.Y.S. 998 (1898).

ing for their $2,000 but a rich experience in the field of litigation while appellee has turned a net profit of $1,500 on the original $500 which he alleges he paid in cash to the tenant of the appellants." Also see: Terry v. Spearman, 259 S.W. 563 (Tex. Civ.App.1924).

Inasmuch as appellant has neither pleaded nor proved any other actual damage for which she can recover, we must set aside the jury's award of exemplary damages. 17 Tex.Jur.2d Damages, § 177.

■ Finally, we notice appellant's point seeking a remand of the case in order that it can be retried on a different theory neither pleaded nor proved at trial. We must reject this point. There can be no reversal unless there is error. There being no error in the trial court's judgment in this case, the judgment must be affirmed.