REDMAN HOMES, INC., Petitioner,

v.

Jimmy D. IVY and Ida Earline
Ivy, Respondents.

No. 95–0652.

Supreme Court of Texas.

April 12, 1996.

Rehearing Overruled May 31, 1996.

Cecil Kuhne, Joe H. Nagy, Lubbock, for petitioner.

Abner Burnett, Odessa, Clifford J. Hardwick, Midland, for respondents.

GONZALEZ, Justice, delivered the opinion for a unanimous Court.

We consider whether the National Manufactured Home Construction and Safety Standards Act (NMHCSSA), 42 U.S.C. §§ 5401–5426, preempts the state-law claims in this case brought under warranty theories and the Deceptive Trade Practices–Consumer Protection Act (DTPA), Tex.Bus. & Com. Code §§ 17.41–17.63. The court of appeals concluded that the claims are not preempted. 901 S.W.2d 676, 683–84. We agree, but for the reasons discussed below, we reverse and remand.

## I. FACTS

Redman Homes, Inc. manufactures mobile homes. In March 1988, Jimmy and Ida Ivy purchased one of Redman's units from Advantage Housing, Inc., a third-party retailer. Along with other documents, the Ivys received from Redman a written limited warranty covering the unit's structure, plumbing, heating system, electrical system, and pre-installed appliances for one year.[1] The Ivys

---

1. The document states in pertinent part:
 Redman Homes, Inc. (the "Manufacturer") warrants this mobile home, including the structure, plumbing, heating, and electrical system, and all appliances and equipment installed by the Manufacturer, when purchased new, to be free from substantial defects of material and workmanship under normal use and service for a period of twelve (12) months.... This limited warranty does not extend to damage resulting from misuse, unau-

moved the unit to their lot and began living in it. In January 1989, a fire destroyed the home and all its contents.

The Ivys sued Advantage and Redman, alleging that the fire resulted from faulty electrical wiring. At trial, Mr. Ivy testified that the fair market value of the goods destroyed was $46,605. However, the only evidence of the market value of the home was Mr. Ivy's testimony that they paid $43,000 for it ten months before the fire. The trial court submitted jury questions concerning whether the defendants breached a warranty or engaged in deceptive trade practices. The jury absolved Advantage of liability, but found against Redman on both claims and awarded the Ivys $79,000 in damages. The trial court rendered judgment on the verdict.

On appeal, Redman alleged error in the trial court's judgment based on federal preemption and, alternatively, on insufficient evidence to support various jury findings. The court of appeals rejected Redman's preemption claim, holding that the NMHCSSA does not preempt warranty or DTPA claims relating to mobile homes. 901 S.W.2d at 683–84. Regarding Redman's evidentiary challenge, the court found the evidence legally sufficient to support the jury's answers to the liability questions, but factually insufficient to support the amount of damages awarded. The court of appeals reversed and remanded for a new trial solely on the issue of damages. *Id.* at 686–87.

## II. PREEMPTION

 The NMHCSSA requires a mobile home manufacturer to obtain a label from the Department of Housing and Urban Development (HUD) certifying compliance with federal standards before the manufacturer can transport or sell the product. *See* 42 U.S.C. § 5409(a). Redman first contends that, because the unit in question complied with all federal standards and obtained the required inspection label, the NMHCSSA precludes the Ivys from recovering on the judgment below. Although several means exist by which federal law may supplant state law, *see Moore v. Brunswick Bowling & Billiards Corp.,* 889 S.W.2d 246, 247–48 (Tex.), *cert.*

denied, —— U.S. ——, 115 S.Ct. 664, 130 L.Ed.2d 599 (1994), our evaluation of this argument is simplified by the existence in the NMHCSSA of an express preemption clause, which provides as follows:

> Whenever a Federal manufactured home construction and safety standard established under this chapter is in effect, no State or political subdivision of a State shall have any authority to establish, or to continue in effect, with respect to any manufactured home covered, *any standard regarding construction or safety* applicable to the same aspect of performance of such manufactured home which is not identical to the Federal manufactured home construction and safety standard.

42 U.S.C. § 5403(d) (emphasis added). When determining whether such a clause preempts state law, we must begin " 'with the assumption that the historic police powers of the States [are] not to be superseded by . . . Federal Act unless that [is] the clear and manifest purpose of Congress.' " *Cipollone v. Liggett Group, Inc.,* 505 U.S. 504, 516, 112 S.Ct. 2608, 2617, 120 L.Ed.2d 407 (1992) (alteration in original) (quoting *Rice v. Santa Fe Elevator Corp.,* 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947)). For several reasons, we reject Redman's argument and conclude that Congress did not intend to preempt either of the Ivys' claims.

First, the plain language of the NMHCSSA does not sustain Redman's position. By its own terms, section 5403(d) preempts only state construction or safety standards that differ from the federal law. The Ivys do not contend that Redman should have adhered to a standard higher than or different from what the federal statute imposes. Redman cites for support the San Antonio Court of Appeals decision of *Macmillan v. Redman Homes, Inc.,* 818 S.W.2d 87 (Tex.App.—San Antonio 1991, writ denied), in which the court held the plaintiffs' claims against a mobile home manufacturer preempted under the NMHCSSA. Redman's reliance on *Macmillan* is misplaced.

In *Macmillan,* the plaintiffs brought a wrongful death and personal injury suit

---

thorized repairs, additions or alterations, or

improper transportation or set-up.

against several defendants, including Redman, alleging harm caused by unreasonably dangerous levels of formaldehyde fumes in the home's ambient air. In response, the defendants urged that the formaldehyde levels did not exceed those permitted under the NMHCSSA, which measured emissions in terms of parts per million. *Macmillan*, 818 S.W.2d at 88–89. Essential to the appellate court's analysis was the fact that HUD had considered and rejected an ambient air standard like the "unreasonably dangerous" standard of care the plaintiffs suggested. *See id.* at 90. Thus, the *Macmillan* plaintiffs sought to impose a specific construction or safety standard that clearly conflicted with a federal law or regulation pertaining to mobile homes. The Ivys' theories of recovery, in contrast, cannot be said to impose any specific, substantive "standard" on mobile home manufacturers that differs from the NMHCSSA.[2]

Second, the NMHCSSA contains a savings clause expressly preserving common-law rights of action. *See* 42 U.S.C. § 5409(c) (stating that "[c]ompliance with any Federal manufactured home construction or safety standard issued under this chapter does not exempt any person from any liability under common law"). This clause indicates that Congress did not intend to preempt all state-law claims involving mobile homes. Redman's position on the Ivys' warranty claims is flawed in light of the language contained in the savings clause.

Finally, the Ivys' claims do not frustrate Congress's intent in enacting the NMHCSSA, which was to improve quality and to reduce personal injuries and property damage resulting from accidents involving mobile homes. *See* 42 U.S.C. § 5401. To the contrary, state-law consumer protections enforcing such regulations further promote this purpose by encouraging manufacturers to build safe and suitable units. Moreover, the administrative regulations pertaining to the statute seem to acknowledge a boundary between the federal law and a remedial state role unrelated to construction and safety standards. *See* 24 C.F.R. § 3282.11(c) (pro-

viding that states "may establish or continue in force consumer protections, such as warranty or warranty performance requirements, which respond to individual consumer complaints and so do not constitute systems of enforcement of the Federal standards").

Under facts indicating that the Ivys had attempted to hold Redman to a safety or construction standard conflicting with the NMHCSSA, as was the case in *Macmillan*, a preemption issue clearly would be raised. Under the facts and applicable law in this case, however, Redman has failed to present any evidence or argument to support a conclusion that the Ivys' claims are preempted. In effect, Redman asks us to hold that a HUD certification label establishes a mobile home's suitability as a matter of law, even though no conflict is apparent between the NMHCSSA and the Texas consumer protection causes of action. We decline to do so.

## III. LEGAL SUFFICIENCY OF THE EVIDENCE

■ Having rejected Redman's claim of federal preemption, we must next determine whether the Ivys presented legally sufficient evidence of liability and damages. The rule is well established that, in reviewing "no evidence" points, we must consider only the evidence and inferences supporting the jury's findings and disregard all contrary evidence and inferences. *Havner v. E–Z Mart Stores, Inc.*, 825 S.W.2d 456, 458 (Tex.1992).

As stated earlier, the jury found Redman liable based on two independent theories of recovery. The DTPA question asked whether Redman engaged in false, misleading, or deceptive acts or practices, and it defined the statutory meaning of those terms. *See* TEX. BUS. & COM.CODE § 17.46(b)(5), (7). The other liability question asked whether Redman failed to comply with a warranty, and it instructed the jury on the applicable subtheories of express warranty and the implied warranties of merchantability and fitness for a particular purpose. *See id.* §§ 2.313–.315. Redman argues that we should render judgment in its favor because the Ivys did not

---

**2.** Our conclusion that the Ivys' claims do not conflict with the NMHCSSA is buttressed by the Texas Legislature's express adoption of the feder-

al standards as the state substantive law governing the mobile home manufacturing industry. *See* TEX.REV.CIV.STAT. art. 5221f, § 4(a).

present probative evidence of liability under the DTPA or any warranty theory.

At trial, the Ivys sought to prove their claims by showing that faulty wiring in the mobile home caused the fire. As proof of causation, they relied exclusively on the testimony of their expert, William Lute, a fire cause-and-origin investigator and former division chief with the Dallas Fire Department. Lute testified that, after examining the remains of the home, he eliminated arson, portable appliances, and all of the permanent appliances, leaving only the wiring running underneath the bathroom floor as the possible cause of the fire. Lute further testified that the burning pattern in the Ivys' home was consistent with the manner in which fires caused by faulty wiring are known to spread. He also offered his opinion about how the wiring could have ignited spontaneously, even though it passed all safety tests and inspections. Additionally, the Ivys presented evidence that the mobile home was used strictly as a single-family residence and that no one attempted to alter the wiring in any way.

■ We consider the warranty issue first. Because of the way the trial court structured the question, the jury's finding of breach of warranty is supported if Lute's testimony is legally sufficient evidence of any of the three submitted bases of warranty liability. *See Coulson v. Lake LBJ Mun. Util. Dist.,* 781 S.W.2d 594, 596 (Tex.1989). We believe it is some evidence of breach regarding all three. Lute's testimony tends to show that Redman breached its express warranty that the "electrical system [would be] free from substantial defects ... for a period of twelve (12) months."[3] Furthermore, the testimony is some evidence that, because the home contained faulty wiring, Redman breached its implied warranties that the home was fit to be used as a residence—its ordinary purpose and the particular purpose for which the Ivys bought it. *See* Tex.Bus. & Com.Code §§ 2.314–.315. At the very least, Lute's testimony is circumstantial evidence of a defect, and we have recognized the validity of such proof when used for purposes of showing

breach of an implied warranty. *See Plas-Tex, Inc. v. U.S. Steel Corp.,* 772 S.W.2d 442, 444 (Tex.1989).

Whether Lute's testimony supports the finding of liability for misrepresentation under the DTPA is a closer question. Redman's legal sufficiency points challenge only the adequacy of Lute's testimony to prove the wiring defective, and the Ivys have not directed our attention to a specific misrepresentation Redman made. Having held that legally sufficient evidence supports the jury's finding that Redman breached a warranty, however, we need not reach the merits of this issue.

Redman's final evidentiary challenge concerns the legal sufficiency of the Ivys' evidence to support the jury's award of $79,000 in actual damages. The jury question at issue asked about the "market value of the property ... destroyed by the fire in question." Redman alleges that the Ivys failed to present probative evidence of the market value of the home itself or of the personal property that they lost in the fire.

■ The only evidence of damages was Jimmy Ivy's testimony at trial. Mr. Ivy testified that he and his wife paid $43,000 for the home, and he gave dollar figures regarding the personal items that they lost in the fire. Redman argues, and the Ivys concede, that his statements about the cost of the home were not admissible to show its market value at the time of the loss. *See, e.g., Rosenfield v. White,* 267 S.W.2d 596, 601 (Tex.Civ.App.—Dallas 1954, writ ref'd n.r.e.); *San Antonio Pub. Serv. Co. v. Murray,* 59 S.W.2d 851, 854 (Tex.Civ.App.—Beaumont 1933), *writ dism'd,* 127 Tex. 77, 90 S.W.2d 830 (Tex.Com.App.1936). Exercising its power of factual sufficiency review, the court of appeals held that the evidence, while legally sufficient, did not support the specific award the jury made. Under these circumstances, we have no authority to question the court's finding of factual insufficiency. *Pool v. Ford Motor Co.,* 715 S.W.2d 629, 634–35 (Tex.1986). Therefore, the sole issue we can determine regarding damages is whether Mr.

---

3. Only ten months elapsed between the sale and fire. Therefore, Redman's one-year limitation

had no effect on the applicability of the express warranty provision.

Ivy's testimony about the personal property constitutes some evidence supporting the jury award. If it does not, we should render judgment for Redman rather than remand.

■ A property owner is qualified to testify to the market value of his property. *Porras v. Craig,* 675 S.W.2d 503, 504 (Tex. 1984). This evidence is probative if it is based on the owner's estimate of market value and not some intrinsic or other value such as replacement cost. *Id.* at 504–05. Redman urges that Mr. Ivy's testimony is legally insufficient to prove the market value of the personal property because he testified only to the value he would place on the items. Our review of the statement of facts shows that, after being instructed on the legal definition of fair market value, Mr. Ivy answered a series of questions and estimated the market value of specific items destroyed by the fire. Mr. Ivy's testimony is some evidence that would allow the jury to assess damages. Therefore, we reject Redman's legal sufficiency challenge, and we leave undisturbed the court of appeals' finding of factual insufficiency.

## IV. APPELLATE RULE 81(b)(1) AND REMITTITUR

■ Finally, Redman complains in the alternative that the court of appeals erred by remanding this case for a new trial solely on the issue of damages. Rule 81(b)(1) of the Texas Rules of Appellate Procedure provides that "a separate trial on unliquidated damages alone shall not be ordered if liability issues are contested." TEX.R.APP.P. 81(b)(1). We will reverse a decision in which the court of appeals exceeded its authority under this rule. *See Otis Elevator Co. v. Bedre,* 776 S.W.2d 152, 153 (Tex.1989) (per curiam); *cf. Houston Natural Gas Corp. v. Janak,* 422 S.W.2d 159, 159–60 (Tex.1967) (per curiam) (applying earlier version). The Ivys conceded at oral submission that liability is contested and the damages are unliquidated in the present case. Moreover, they admitted that Rule 81(b)(1) mandates a remand of both issues under these circumstances. We therefore reverse the judgment of the court of appeals with respect to the scope of its remand order.

■ The Ivys have attempted to escape the consequences of the court of appeals' error by tendering a voluntary remittitur in the amount of $32,395 to this Court. They argue that Mr. Ivy's testimony about the market value of the personal property lost in the fire is sufficient evidence to show $46,605 in damages; the amount of the remittitur reflects the difference between that amount and the jury award. Upon careful consideration, we conclude that we cannot grant the Ivys this relief.

The Rules of Appellate Procedure delineate two means by which remittitur may be effectuated on appeal. First, the court of appeals may suggest remittitur in lieu of ordering a new trial. TEX.R.APP.P. 85(c). Alternatively, a party may voluntarily remit to the court of appeals within fifteen days after it issues an opinion or judgment reversing because of an error of law affecting only part of the case. TEX.R.APP.P. 85(e). The rules do not expressly authorize a party to remit to this Court, though we recognize that we have accepted remittitur in the past. *See, e.g., Moore v. Grantham,* 599 S.W.2d 287, 292 (Tex.1980); *Ogle v. Craig,* 464 S.W.2d 95, 98–99 (Tex.1971); *Texas Employers' Ins. Ass'n v. Lightfoot,* 139 Tex. 304, 162 S.W.2d 929, 931 (Tex.1942). To resolve the case before us today, we need not decide whether this lack of express authority in the rules prevents us from accepting remittitur.

Our decisions are limited by a paramount rule: We can consider only questions of law. *Champlin Oil & Ref. Co. v. Chastain,* 403 S.W.2d 376, 390 (Tex.1965); *see* TEX.GOV'T CODE § 22.001. The Ivys' offer of remittitur presumes that we can conclusively ascertain from the record the amount of damages untainted by what they concede was inadmissible testimony about the mobile home's market value. We are unable to do so. The trial court submitted the issue of damages globally, and although the Ivys contend that Mr. Ivy's admissible testimony was sufficient to support an award of $46,605, we cannot say that it establishes that amount as a matter of law. *See Bendalin v. Delgado,* 406 S.W.2d 897, 901 (Tex.1966). Therefore, no basis exists for concluding that remittitur is an available remedy in this case.

## V. CONCLUSION

We affirm the judgment of the court of appeals on the issues of federal preemption and legal sufficiency of the evidence. However, under the facts of this case, the court erred by remanding only the damages issue for a new trial. Accordingly, the judgment of the court of appeals is reversed and the cause is remanded to the trial court for further proceedings consistent with this opinion.