Opinion issued December 8, 2005
















In The
Court of Appeals
For The
First District of Texas




NO. 01-04-00572-CV




CHUBB LLOYDS INSURANCE COMPANY OF TEXAS, Appellant

V.

 H.C.B. MECHANICAL, INC., Appellee

* * *

H.C.B. MECHANICAL, INC., Appellant

V.

CHUBB LLOYDS INSURANCE COMPANY OF TEXAS, Appellee




On Appeal from the 113th District Court
Harris County, Texas
Trial Court Cause No. 2002-05390




O P I N I O N
          After settling a claim by John Knapp for damages caused by a fire at his at
residence, Chubb Lloyds Insurance Company (“Chubb”) brought a subrogation suit
sounding in negligence against H.C.B. Mechanical, Inc. (“HCB”). The jury found
HCB negligent, awarding damages to Chubb in the amount of $40,000, and the trial
court rendered judgment on the verdict. Chubb appeals from the damages award, and
H.C.B. appeals from the negligence finding. We reverse the trial court’s judgment
and render judgment that Chubb take nothing.
BACKGROUND
          At approximately 8:42 p.m. on November 7, 2000, a neighbor of John Knapp
called the Houston Fire Department to report a fire at Knapp’s home. The home,
located in a gated community, was currently undergoing significant renovations. 
After firefighters put out the fire, the Houston Fire Department’s Arson Bureau was
called in to determine the cause of the fire.


 Mike Zigal was the lead investigator in
determining the cause of the fire at the Knapp’s house and wrote the final report. 
Because they could not identify any accidental cause, Zigal concluded, and his two
fellow investigators agreed, that the “catchall” or default option of arson should be
listed on the bureau’s report as the cause of the fire, although the investigation
remained open. 
          The day after the fire, Chubb sent out its hired fire investigator, Mike
Southerland, who was employed with S.E.A., Inc. (SEA). After conducting his
investigation, Southerland concluded that the fire started from one of three possible
accidental causes: (1) a “drop light”


 used by HCB; (2) a plumbing torch used by
HCB; or (3) a carelessly discarded cigarette by an HCB worker. Chubb’s pleadings
also alleged that, in the alternative, HCB’s failure to properly secure the residence
allowed an arsonist to enter the house and set it alight.
          HCB was the sub-contractor hired by CECO Contractors to perform the
plumbing work needed to convert one large bathroom into two smaller bathrooms. 
In order to accomplish this, HCB had to jackhammer two holes in the concrete
foundation about five feet apart. Both the Arson Bureau and Southerland agreed that
the fire originated in the smaller of the two holes in bathroom area. 
          For any of Southerland’s fire origination theories to prove correct, the existence
of trash or debris in the hole where the fire started was crucial so that there would be
a “combustible.” While it was undisputed that there was trash—consisting mostly of
“paper and debris”—in the hole, it was not clear from the evidence how it got there. 
Southerland speculated that HCB’s workers may have left it in the hole and then left
for the day. Southerland did testify that he had no personal knowledge of trash being
in the hole because the hole had been excavated when he arrived the next day. Nor
could anyone explain why the trash found in the hole in which the fire originated was
not consumed by the fire. It was also noted that a one-half full gasoline can and other
flammable liquids on the premises were not disturbed. Finally, it was undisputed that
only HCB had workers at the residence on the day of the fire.HCB’S LIABILITY
           HCB contends that the evidence is legally insufficient to support the jury’s
finding of negligence because there is no evidence that it breached its duty or
proximately caused the fire at the Knapp residence. Standard of Review       The supreme court recently discussed the appropriate standard of review for
legal sufficiency challenges in City of Keller v. Wilson. 168 S.W.3d 802 (Tex. 2005). 
The court concluded that “[t]he final test for legal sufficiency must always be whether
the evidence at trial would enable reasonable and fair-minded people to reach the
verdict under review. . . . [L]egal-sufficiency review in the proper light must credit
favorable evidence if reasonable jurors could, and disregard contrary evidence unless
reasonable jurors could not.” Id. at 827.
          When reviewing a no-evidence point of error,“all the record evidence must be
considered in the light most favorable to the party in whose favor the verdict has been
rendered, and every reasonable inference deducible from the evidence is to be
indulged in that party's favor.” Merrell Dow Pharms., Inc. v. Havner, 953 S.W.2d 41,
48 (Tex. 1998). “Anything more than a scintilla of evidence is legally sufficient to
support the finding.” Formosa Plastics Corp. v. Presidio Eng’rs & Contractors, Inc.,
960 S.W.2d 41, 48 (Tex. 1998). 
          1. The Plumbing Torch Theory
 
          On the day of the fire, Patrick Embry, the supervisor of the HCB plumbing
crew, used a plumbing torch early in the afternoon to melt out the lead in the joints
of the pipes where he was working. When using a plumber’s torch on these types of
pipes a material called “yocum”—a rope like substance which prevents the hot lead
from leaking into the pipe being worked on—is loosened from the pipes. This
material emanates smoke and gives off an unpleasant odor when burned. In the
process of using the torch, Embry removed some of the smoldering yocum from the
hole he was working in, by having one of the day laborers pick it up with a shovel
and take it to the dumpster outside. It is undisputed that Embry was working in the
hole opposite from where the fire started, and that he stopped using the torch around
2:00 p.m. Embry and the other HCB workers left the Knapp residence at 5:00 p.m. 
          Southerland explained his theory as to how the smoldering yocum could have
caused the fire as thus:
If we had some smoldering material and to get it out of the way and
remove it they threw it back over near this hole that we’re talking about
[where the fire originated], actually threw that smoldering material over
there or something, it could have laid there and smoldered and set
combustibles on fire after they had left for the day.
 
Chubb relies on three cases in urging us to uphold the jury’s negligence finding. 
Attempting to draw a parallel to the instant facts, Chubb points to Redman Homes,
Inc. v. Ivy for the proposition that a fire investigator (like Southerland) can point to
“the possible cause of the fire.” 920 S.W.2d 664, 668 (Tex. 1996) (emphasis in
Chubb’s Brief). However, Chubb’s argument places the emphasis on the wrong
word; in Redman Homes, the fire investigator eliminated all other causes “leaving
only the wiring running underneath the bathroom floor as the possible cause of the
fire.” Id. (emphasis added). Moreover, the fire investigator in that case was able to
point toward the “burning pattern in the Ivys’ home [as] consistent with the manner
in which the fires caused by faulty wiring are known to spread.” Id.
          Here, however, Southerland testified as to three distinct possible
scenarios—this is not analogous to the Redman Homes situation where the
investigator, by process of elimination, narrowed the cause to only one possibility
coupled with additional evidence as to why that theory could be the only correct one. 
Id. In doing this, the investigator in Redman Homes, by definition, no longer had a
“possible” cause, but the cause. Southerland’s testimony did not eliminate any of the
possible causes; therefore Redman is of no help to Chubb.
          Chubb also relies on two other cases for the proposition that HCB cannot
disparage Southerland’s description of the various scenarios as “possibilities”
because, taken in context, “possibility” (and its variants) can mean “probablity.” See
Otis Elevator Co. v. Wood, 436 S.W.2d 324, 331-332 (Tex. 1968) (“it is the
substance, not the form, of the testimony that is determinative); Ralph v. Mr. Paul’s
Shoes, Inc., 572 S.W.2d 812, 814 (Tex. Civ. App.—Corpus Christi 1978, writ ref’d
n.r.e.) (expert’s opinion expressing probabilities as opposed to pure conjecture is not
matter of semantics but court should look to entire substance of expert’s testimony).
          However, Chubb’s reliance on these cases only gets them halfway to where
they want to be. It is true that this court should not engage in semantic exercises and
instead should look at the substance of Southerland’s testimony. However, once the
testimony regarding the plumbing torch is examined, it is clear that no substance
exists.
          In Marathon Corp.v. Pitzner, the Texas Supreme Court reiterated the basics of
proving up the proximate cause element of a negligence cause of action.
The components of proximate cause are cause in fact and foreseeability. 
The test for cause in fact, or “but for causation,” is whether the act or
omission was a substantial factor in causing the injury without which the
harm would not have occurred. A finding of cause in fact may be based
on either direct or circumstantial evidence, but cannot be supported by
mere conjecture, guess, or speculation. 

106. S.W.3d 724, 727 (Tex. 2003) (citations omitted). In explaining further, the court
went on to remind: “as we have frequently said, some suspicion linked to other
suspicion produces only more suspicion, which is not the same as some evidence. We
have also said that an inference stacked only on other inferences is not legally
sufficient evidence.” Id. at 728 (citations omitted) (holding that expert’s opinion on
proximate causation amounted to no more than mere conjecture and speculation as to
events surrounding accident).
          “Expert opinions must be supported by facts in evidence, not conjecture.” Id.
at 729. Southerland’s theory that the plumber’s torch was a possible cause of the fire 
can only be classified as guesswork. From the known fact that at some point on the
day of the fire there was smoldering yocum in a hole near where the fire originated,
one would have to infer that the worker, while taking the yocum outside, either threw
or let fall from the shovel some yocum into the hole where the fire originated, that the
yocum smoldered from 2:00 p.m. until sometime before 8:42 p.m.—when the fire was
reported—and that this then caused the trash found in the fire-originating hole, the
presence of which could not be fully explained, to catch flame, causing the house to
burn.
          We cannot uphold a finding of negligence under the plumbing torch theory
because there are simply too many inferences upon inferences that must be stacked to
reach the causation element. “[I]n cases with only slight circumstantial evidence,
something else must be found in the record to corroborate the probability of the fact’s
existence or non-existence. That ‘something else’ is absent in this case.” Id. There
is no evidence that the plumbing torch proximately caused the fire at the Knapp
residence. 
          2. Smoldering Cigarette Theory
          Alternatively, Southerland theorized that a smoldering cigarette from Embry or
one of the other HCB workers may have started the fire. Southerland testified as
follows:
A: When someone is smoking, if they’re a smoker, they have a tendency
to throw their cigarette away or throw it down. If a cigarette had been
thrown down, if someone had been smoking in this area, threw a cigarette
over near that hole, it laid there near combustibles, smoldered for awhile. 
After they left, it could have burst into flames.
 
Q: Okay. Now, again, what is your understanding of when the HCB
Mechanical employees like Patrick Embry when [sic] they left that day?
 
A: He told me he left about 5:00 p.m. He did tell me he was a smoker. 
If he had been smoking in that area, he could have thrown a cigarette
down without even thinking, and he could have actually thrown his
cigarette down and left for the day and it smoldered and then started a
fire later.
 
          Patrick Embry testified at trial that he was a smoker and that he smoked at the
Knapp residence on the day of the fire. Embry also testified that in the past he smoked
indoors at commercial building jobs. There was also testimony from Embry’s
supervisor that he had seen discarded cigarette butts on the floor of the work area after
the fire at the Knapp residence.
          Chubb argues that, given this evidence, the jury could infer that Embry
negligently started the fire. However, this theory also collapses under the weight of
the multiple inferences that must be stacked in order to reach Southerland’s scenario. 
This testimony only establishes that Embry smoked on the day of the fire; from there,
the fact finder must infer that Embry (or another HCB worker) (1) smoked a cigarette
by the hole where the fire originated; (2) carelessly or accidentally flicked a still
burning cigarette into the hole; (3) the cigarette smoldered for at least a few hours (if
we grant that the lit cigarette found its way into the hole at the latest possible
time—5:00 p.m. when the HCB workers left); (4) the cigarette eventually caught the
trash and debris on fire; and (5) that HCB was responsible for, or at least knew of, the
trash and debris in the hole when the cigarette was flicked.


 
          “Expert opinion must be supported by facts in evidence, not conjecture. Id. 
Again, “in cases with only slight circumstantial evidence, something else must be
found in the record to corroborate the probability of the fact’s existence or
non-existence.” Id. Here, as with the plumbing torch theory, that something else is
absent in this case. See id. There is no evidence that a cigarette discarded carelessly
or accidentally by an HCB employee proximately caused the fire at the Knapp
residence. 
          3. The Drop Light Theory
          The last in the trio of Southerland’s theories was that a drop light found in the
hole where the fire originated caused the fire at the Knapp’s residence. Southerland
theorized that the light was left energized when the HCB workers left at 5:00 p.m. 
Southerland stated that he based this on a conversation he had with Zigal, in which
Zigal stated that the drop light was probably plugged in during the fire. Southerland
conceded that, because he first arrived at the Knapp house the day following the fire,
he had no personal knowledge about whether the wire was plugged in and could not
recall when the alleged conversation with Zigal had taken place. Zigal himself
testified that the cord was unplugged when he arrived at the Knapp’s residence and
none of the first responder firefighters told him that they had unplugged the drop light
during the course of suppressing the fire. 
          Zigal came to the conclusion that the drop light was unplugged because soot
was covering the outlet, and if the light had been plugged in, there would have been
a clear area the size of the plug on the outlet. The electrical engineer who examined
the cord of the drop light found no evidence of “arcing and bending”—where parts of
the electrical wire become so hot that they soften and sputter off by force of the
arc—that would indicate that it had been plugged in during the fire.
          Looking at the evidence, as we must, in the light most favorable to the verdict,
Southerland’s drop light theory suffers from the same fatal flaw as preceding theories:
it is premised on complete conjecture—coupled with a total lack of personal
knowledge. See City of Keller, 168 S.W.3d at 827. Therefore, Chubb supplied the
jury with no evidence to consider at all. Again, we defer to the supreme court’s
language in Marathon Corp: “[e]xpert opinions must be supported by facts in
evidence, not conjecture.” Id. Again, the something else necessary to corroborate
Southerland’s drop light theory is absent in this case. See id.           
          4. Arson Theory
          Chubb’s last, alternative theory was that HCB was negligent in not securing the
door, thereby allowing an arsonist to walk into the house and set it ablaze. Chubb
again urges this argument on appeal. However, this argument places the analytical
cart before the horse. We must first determine whether there is any evidence of arson
in the record before we can know whether there can be any injury flowing from such.
          The only possible basis for a finding of negligence under the arson theory is the
Arson Bureau’s report.


 The arson investigators concluded in their report that arson
was the catchall or “default” cause of the fire because they believed they had ruled out
all accidental causes. Chubb’s trial counsel and Zigal had these exchanges at trial:
Q: So, the best you can do is you can sift through the ashes and try to
deduce by looking at what happened like the heat and the way the fire
came and the direction [of] the flame pattern and that sort of stuff, right?
 
A: Right.
 
Q: That’s about the best you can do?
 
A: Right.
 
Q: And based on all the stuff that you gather you come up with your best
guess on how this fire occurred?
 
          A: Right.
 
Q: Based on evidence, right?
 
A: Right. 
 
          * * *
 
Q: What you did not find in this house were gas pour patterns all the way
through this house. True?
 
A: That’s correct.
 
Q: And isn’t it a fact whenever somebody really wants to torch a house,
investigated them yourself, you’ve seen gasoline pour patterns.
 
A: I have.
 
Q: Great way to burn a house down is take a gas can, like the arsonist
that walked by the night of this fire, and take this gas and just pour it
down each one of the carpeted runs, right?
 
A: That’s one way.
 
Q: Right. And as you mentioned earlier, that gas makes that thing go up
fast, correct?
 
A: Right.
 
Q: But you didn’t find pour patterns?
 
A: No, I didn’t. 
          Again, we note that an “[e]xpert[’s] opinions must be supported by facts in
evidence, not conjecture.” Id. at 729 (emphasis added). Here, the Arson Bureau’s
report stating that the cause of the fire was arson was really a “negative conclusion.”
That is, the report’s “conclusion” was really not a conclusion at all—saying that some
other events, especially so in the instant context, could not or did not occur, does not,
without more, make another alternative the definitive cause. Zigal conceded at trial
that the investigation into the fire was still “open” and the report was the product of
a few hours spent at the Knapp residence on the night of the fire.


 
          Here, neither the Arson Bureau’s report, nor anything else in the record,
corroborates the probability of arson. Therefore, there is no evidence that arson was
the cause of the fire.
CONCLUSION
          Chubb has produced neither direct nor circumstantial evidence to support the
inferences necessary to establish any of its four theories of causation. Accordingly,
we sustain HCB’s issue. In light of this holding we need not address Chubb’s
damages issue. Accordingly, we reverse the trial court’s judgment in its entirety and
render judgment that Chubba take-nothing. 
 
 
                                                             Sam Nuchia
                                                             Justice
 
Panel consists of Justices Nuchia, Jennings, and Higley.