

**NUMBER 13-08-00633-CV**

**COURT OF APPEALS**

**THIRTEENTH DISTRICT OF TEXAS**

**CORPUS CHRISTI - EDINBURG**

---

**CHARLES CLARK CHEVROLET CO.,**                              **Appellant,**

**v.**

**FRANK E. GARCIA,**                                          **Appellee.**

---

**On appeal from County Court at Law No. 2
of Hidalgo County, Texas.**

---

**MEMORANDUM OPINION**

**Before Justices Rodriguez, Garza, and Benavides
Memorandum Opinion by Justice Rodriguez**

Appellant Charles Clark Chevrolet Co. (Charles Clark) challenges the judgment of

the trial court in favor of appellee Frank E. Garcia. By four issues, Charles Clark argues

that: (1) there was no evidence of damages from the alleged conversion; (2) the trial court

erred in entering judgment for Garcia based on conversion because (a) the parol evidence

rule prohibited consideration of certain evidence presented by Garcia, (b) Charles Clark had a possessory lien on the vehicle in question because Garcia authorized certain repairs, and/or (c) ratification, quantum meruit, and *quantum valebant* barred Garcia's recovery; (3) the trial court erred in denying Charles Clark's counterclaim for breach of contract for Garcia's failure to pay a service invoice; and (4) the judgment is erroneous because it awards damages for conversion without disposing of title to the vehicle. We affirm, in part, and reverse and remand, in part.

## I. BACKGROUND

The following facts in this case are undisputed. In late July 2007, a friend of Garcia took Garcia's 2005 Chevrolet Corvette to Charles Clark, a Chevrolet dealership, for repairs while Garcia was out of town. The friend reported to Charles Clark's service department that, among other problems, the engine "wo[uld]n't crank" or "wo[uld]n't fire up." It was discovered by service technicians that the Corvette had been driven through high water. After obtaining the authorization of Garcia's insurance carrier, Charles Clark replaced the Corvette's engine.[1] Garcia received a check for approximately $12,000 from his insurance carrier, which he deposited in his bank account. The total cost of the repairs made by Charles Clark was $13,743.77; Charles Clark demanded payment of this sum from Garcia, but Garcia never paid that amount. Instead, Garcia sent Charles Clark a check for $1,500.00. Charles Clark neither cashed nor deposited that check. Garcia never remitted any of the money he received from his insurance carrier to Charles Clark. As of the date

---

[1]At some point after Garcia returned to town, he signed a contract with Charles Clark authorizing the dealership to repair the non-functioning engine. The parties dispute the extent of the repairs Garcia authorized Charles Clark to make.

2

of this opinion, the Corvette is still in Charles Clark's possession.[2]  Moreover, at the time of trial, Garcia still owed money on the Corvette and was paying a $997 note on the vehicle every month.[3]

On November 13, 2007, Garcia filed his original petition in this case, alleging conversion against Charles Clark.  Charles Clark answered; pleaded various affirmative defenses, including offset, failure to mitigate, quantum meruit and *quantum valebant*, and that it held a possessory worker's lien on the Corvette, *see* TEX. PROP. CODE ANN. 70.001(a) (Vernon 2007); and asserted a counterclaim against Garcia for breach of contract for his failure to pay for the repairs made to the Corvette.  The case proceeded to trial before the court, which heard testimony from Garcia and a Charles Clark service manager.  The trial court entered judgment in favor of Garcia and awarded the following damages:  a "base amount of $42,000.00 . . . less $12,000.00 Insurance money" for a total of "$30,000 for [Garcia] against [Charles Clark]."[4]  The judgment further ordered that Charles Clark take nothing by its counterclaim.  The judgment did not address the state of title to the Corvette.  Charles Clark filed a motion for new trial, which was denied by operation of law.[5]  This appeal followed.

---

[2]Prior to the filing of this suit, Garcia filed an application for writ of sequestration in the justice court of Hidalgo County.  The Corvette was temporarily returned to Garcia in connection with that proceeding. However, upon motion by Charles Clark, the application was dismissed for lack of jurisdiction, and the court ordered the Corvette returned to the possession of Charles Clark.  The outcome of that proceeding is not before this Court.

[3]There is no evidence in the record indicating the total amount Garcia still owes on the Corvette or to whom he owes that amount.

[4]The judgment also awarded pre- and post-judgment interest.

[5]In its motion for new trial, Charles Clark argued that there was no evidence or insufficient evidence to establish that the repair authorization signed by Garcia was limited in any way and that allegations of such limitations were not permitted under the parol evidence rule.  Charles Clark also argued that the judgment allowed double recovery and unjustly enriched Garcia.  Finally, Charles Clark contended that the judgment was "confusing" in that it did "not dispose of the vehicle itself, [was] not clear on the disposition of prior

3

## II. Sufficiency of the Evidence

By its first and second issues, Charles Clark appears to challenge the evidence supporting the trial court's award of damages and judgment in favor of Garcia's conversion claim.[6]

## A. Standard of Review

This case is before us on appeal from a bench trial after which the trial court filed no findings of fact or conclusions of law. The record includes both the clerk's record and the full reporter's record of the trial. When a trial court does not issue findings of fact and conclusions of law, all facts necessary to support the judgment are implied. *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002). The trial court's judgment must

---

insurance proceeds, and [did] not address outstanding liens" on the vehicle and that unless the judgment was "amended, clarified, and supplemented[,] the rights, obligations and duties of the parties will not have been fully adjudicated."

[6]In its brief of its second issue, Charles Clark cites partial authority for the parol evidence rule but does not explain the entire principle of law and advances no substantive legal analysis addressing how the parol evidence rule was violated here. Similarly, by its third issue, Charles Clark summarily states that the trial court erred in denying its counterclaim but provides no legal authority regarding breach of contract or clear and concise argument applying that law to the facts of this case. As such, "[i]t would be inappropriate for this [C]ourt to speculate as to what [Charles Clark] may have intended to raise as an error by the trial court on appeal. To do so would force this [C]ourt to stray from our role as a neutral adjudicator and become an advocate for [Charles Clark]." *Canton-Carter v. Baylor College of Med.*, 271 S.W.3d 928, 931 (Tex. App.–Houston [14th Dist.] 2008, no pet.). Therefore, these issues have been inadequately briefed. *See* Tex. R. App. P. 38.1(i) (providing that a brief must contain "a clear and concise argument that includes appropriate citations to legal authority and to the appellate record"); *Valadez v. Avitia*, 238 S.W.3d 843, 845 (Tex. App.–El Paso 2007, no pet.). Charles Clark's second issue is overruled insofar as it relies on the parol evidence rule; Charles Clark's third issue regarding its counterclaim is overruled in its entirety.

By its second issue, Charles Clark also appears to argue that the trial court erred in denying its affirmative defenses of ratification, quantum meruit, and *quantum valebant* because Garcia is unjustly enriched if he is allowed to keep the $12,000 he received from his insurance carrier for the repair. The judgment does not support Charles Clark's contention that the trial court denied these defenses, however. Because the trial court reduced Garcia's money damages by "$12,000.00 Insurance money" and Garcia does not complain of that reduction, we are not persuaded by Charles Clark's contention. *See Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990) (holding that the trial court's judgment must be affirmed if it can be upheld on any legal theory that finds support in the evidence); *Doe v. Tarrant County Dist. Attorney's Office*, 269 S.W.3d 147, 152 (Tex.App.-Fort Worth 2008, no pet.) (same). Garcia's second issue is therefore overruled to the extent that it advances these defenses.

be affirmed if it can be upheld on any legal theory that finds support in the evidence. *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990); *Doe v. Tarrant County Dist. Attorney's Office*, 269 S.W.3d 147, 152 (Tex.App.–Fort Worth 2008, no pet.).

When, as in this case, the clerk and reporter's records are filed, the trial court's implied findings are not conclusive and may be challenged for legal and factual sufficiency. *Marchand*, 83 S.W.3d at 795. Although Charles Clark's arguments do not clarify whether it has asserted legal or factual sufficiency challenges, its arguments and the relief requested by those arguments consistently seek rendition in its favor, on grounds that either there is no evidence of a particular element of Garcia's cause of action or that Charles Clark proved its case or disproved Garcia's as a matter of law. We therefore construe Charles Clark's arguments as asserting legal-sufficiency or "no evidence" challenges. *See Vista Chevrolet, Inc. v. Lewis*, 709 S.W.2d 176, 176 (Tex. 1986) (stating the well-settled rule that "no evidence" points require rendition in favor of appealing party).

We conduct our review of sufficiency challenges to implied findings under the same standards of review that govern sufficiency challenges to jury findings or a trial court's findings of fact. *Roberson v. Roberson*, 768 S.W.2d 280, 281 (Tex. 1989). We may sustain a legal sufficiency challenge only when: (1) the record discloses a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence establishes conclusively the opposite of a vital fact. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003). In determining whether there is legally sufficient evidence to support the

5

finding under review, we must consider evidence favorable to the finding if a reasonable fact finder could and disregard evidence contrary to the finding unless a reasonable fact finder could not. *City of Keller v. Wilson*, 168 S.W.3d 802, 807, 827 (Tex. 2005).

Anything more than a scintilla of evidence is legally sufficient to support the finding. *Cont'l Coffee Prods. Co. v. Cazarez*, 937 S.W.2d 444, 450 (Tex. 1996). When the evidence offered to prove a vital fact is so weak as to do no more than create a mere surmise or suspicion of its existence, the evidence is no more than a scintilla and, in legal effect, is no evidence. *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 601 (Tex. 2004). More than a scintilla of evidence exists if the evidence furnishes some reasonable basis for differing conclusions by reasonable minds about the existence of a vital fact. *Rocor Int'l, Inc. v. Nat'l Union Fire Ins. Co.*, 77 S.W.3d 253, 262 (Tex. 2002). If an appellant attacks the legal sufficiency of an adverse finding on an issue on which it had the burden of proof—such as an affirmative defense—"it must demonstrate on appeal that the evidence conclusively established all vital facts in support of the issue." *Tricon Tool & Supply, Inc. v. Thumann*, 226 S.W.3d 494, (Tex. App.–Houston [1st Dist.] 2006, pet. denied) (citing *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001)).

### B. Fair Market Value Damages

By its first issue, Charles Clark argues that there was no evidence of damages from the alleged conversion. Specifically, Charles Clark appears to challenge the trial court's implied finding that Garcia suffered damages in the amount of the fair market value of the Corvette and contends that Garcia's testimony regarding the market value of the vehicle is insufficient evidence to support the award. *See Marchand*, 83 S.W.3d at 795 (allowing

6

an appellant to challenge the sufficiency of the evidence supporting a trial court's implied finding). We disagree.

"Generally, the proper measure of damages for conversion is the fair market value of the items converted at the time and place of conversion." *Khorshid, Inc. v. Christian*, 257 S.W.3d 748, 760 (Tex. App.–Dallas 2008, no pet.). "A property owner is qualified to testify to the market value of his property." *Redman Homes, Inc. v. Ivy*, 920 S.W.2d 664, 669 (Tex. 1996). Specifically, a car owner can testify as to the value of his own car. *Foxx v. DeRobbio*, 224 S.W.3d 263, 268 (Tex. App.–El Paso 2005, no pet.) (citing *Calvert Fire Ins. Co. v. McClintic*, 267 S.W.2d 568, 570 (Tex. Civ. App.–Waco 1954, writ ref'd n.r.e.)). So long as it is based on the owner's estimate of market value and not some intrinsic or other value, this evidence is considered probative. *Redman Homes*, 920 S.W.2d at 669. In other words, a property owner's testimony regarding the market value of his property is admissible evidence of damages "if his testimony shows he is familiar with the market value and his opinion is based on that market value." *Khorshid*, 257 S.W.3d at 760.

It is undisputed that Garcia was the owner of the Corvette, and at trial, Garcia testified regarding the market value of the vehicle. He stated that he paid $53,000 for the Corvette when it was new and that, at the time it was taken to Charles Clark, it had 26,499 miles on it. He testified that he would have asked at least $42,000 for the car if he had tried to sell it on the open market in July 2007. When asked for the basis of that dollar figure, Garcia stated that he considered "the equipment that the car has on it and with the 26,000 miles . . . that's the appraised value" that he would have given the car at that time.

7

Charles Clark argues that there is no evidence that Garcia was familiar with the actual market value of his Corvette. Citing *Hanks v. Gulf, Colorado & Santa Fe Railway Co.*, 320 S.W.2d 333, 336 (Tex. 1959), Charles Clark also asserts that evidence of unaccepted offers to buy or sell property is no evidence of fair market value. We are unpersuaded by Charles Clark's contentions. A plaintiff need not use the exact words "market value" to demonstrate his familiarity with the market value of his car. *See Mercedes-Benz of N. Am., Inc. v. Dickenson*, 720 S.W.2d 844, 848-49 (Tex. App.–Fort Worth 1986, no writ) (citing *Porras v. Craig*, 675 S.W.2d 503, 504-05 (Tex. 1984)); *see also Guar. County Mut. Ins. Co. v. Williams*, 732 S.W.2d 57, 60 (Tex. App.–Amarillo 1987, no writ) (holding that "even if the owner is not asked if he is familiar with the market value of his property, his opinion testimony of value is sufficient if it shows that it *refers* to market value" (emphasis added)). Rather, the plaintiff demonstrates his qualification to testify as to the value of the disputed property if his testimony includes factors relevant to the market value rather than factors merely relevant to intrinsic or personal value. *See First Nat'l Bank of Mo. City v. Gittelman*, 788 S.W.2d 165, 169 (Tex. App.–Houston [14th Dist.] 1990, no writ) (holding that there was some evidence of market value where the property owner testified that she considered relevant market factors in arriving at her opinion); *see also Redman Homes*, 920 S.W.2d at 669. Here, Garcia testified that he based his estimate of market value on the equipment in the Corvette and the mileage on the vehicle. These are both objective factors relevant to the market value of the Corvette, not merely the intrinsic value of the vehicle to Garcia. *See Gittelman*, 788 S.W.2d at 169; *Dickenson*, 720 S.W.2d at 849. Garcia's testimony is, therefore, some evidence—certainly more than a

8

scintilla—of the market value of the Corvette, and we cannot agree with Charles Clark that no evidence supported the trial court's award of fair market value damages. *See Rocor Int'l, Inc.*, 77 S.W.3d at 262; *Cazarez*, 937 S.W.2d at 450. Charles Clark's first issue is overruled.

### C. Authorization for Repair

In its second issue, Charles Clark appears to challenge the trial court's implied finding that Garcia did not authorize the replacement of the engine in his Corvette and conclusion that Charles Clark did not prove its affirmative defense that it held a possessory worker's lien on the vehicle. *See Marchand*, 83 S.W.3d at 795. We construe this issue as an argument by Charles Clark that the evidence is insufficient to establish conversion—i.e., that it wrongfully exercised dominion or control over the Corvette inconsistent with Garcia's rights. *See Smith v. Maximum Racing, Inc.*, 136 S.W.3d 337, 341-42 (Tex. App.–Austin 2004, no pet.) (reasoning that where a defendant has a lawful worker's lien on a vehicle, possession cannot be wrongful or unlawful as required to establish conversion); *Hydra-Rig, Inc. v. ETF Corp.*, 707 S.W.2d 288, 290 (Tex. App.–Fort Worth 1986, writ ref'd n.r.e) (holding that a worker's lien is not valid if the repairs were not authorized by the owner of the property).

At trial, Garcia testified that a friend took the Corvette to Charles Clark while Garcia was out of town because, among other reasons, the engine would not start. After Garcia returned to town, he signed a contract authorizing Charles Clark to make repairs relevant to the complaints made by his friend when he brought the Corvette to the dealership, including that the "engine won't crank" and that the "engine won't fire up." That contract

9

appears in the record and includes the following language: "I hereby authorize *the above repair work* to be done along with the necessary material . . . " (emphasis added). We conclude that "the above repair work" includes remedying the complaints made about the engine.

However, the parties dispute the extent of the repairs that were authorized. A Charles Clark service manager testified at trial that he informed Garcia that the Corvette's engine needed to be replaced and that, although Garcia was upset about that diagnosis, he agreed to the repair. Garcia does not deny he signed the contract but testified that he never authorized replacement of the engine. He stated that, at some point before the engine was replaced, he went to the dealership and that the Corvette was running at that time. Garcia testified that the service manager told him at that meeting that there were still problems with the engine—a clunking noise that Garcia stated he could not hear—and that further repairs were needed. In his testimony at trial, Garcia insisted that he was never informed, prior to the engine being replaced, that engine replacement was the repair needed. Garcia stated that the only repair he agreed to was a repair to the alternator and that he tendered payment of $1,500 to Charles Clark to cover that repair.

Because it is within the fact finder's—here, the trial court's—sole province to resolve conflicting testimony, we must conclude that there was legally sufficient evidence that Garcia did not authorize the engine replacement in the Corvette. *See Ins. Network of Tex. v. Kloesel*, 266 S.W.3d 456, 469 (Tex. App.–Corpus Christi 2008, pet. denied) (citing *City of Keller*, 168 S.W.3d at 819) (holding that the fact finder is the ultimate judge of a witness's credibility, that it may choose to believe one witness over another, and that we may not impose our own opinion to the contrary). And having concluded that the evidence

10

supported the trial court's implied finding that the engine replacement was not authorized by Garcia, we also conclude Charles Clark failed to demonstrate that the evidence conclusively established its affirmative defense that it held a possessory lien on the Corvette. *See Tricon Tool*, 226 S.W.3d at 501; *Hydra-Rig, Inc.*, 707 S.W.2d at 290 (holding that there can be no valid worker's lien if the repairs made to the property were not authorized by the owner). Therefore, there was more than a scintilla of evidence that Charles Clark wrongfully exercised dominion or control over the Corvette inconsistent with Garcia's rights. *See Cazarez*, 937 S.W.2d at 450*; Smith*, 136 S.W.3d at 341-42; *see also Worford*, 801 S.W.2d at 109 (holding that a trial court's judgment must be affirmed if it can be upheld on any legal theory that finds support in the evidence). Charles Clark's second issue is overruled.

### III. TITLE TO THE CORVETTE

By its fourth and final issue, Charles Clark argues that the trial court's judgment is erroneous because it awards damages for conversion without disposing of title to the Corvette. We agree. A successful suit for conversion amounts to a forced sale, and the judgment in that case must provide that upon payment of money damages, the ownership of the property is to vest in the defendant. *See Virgil T. Walker Constr. Co., Inc. v. Flores*, 710 S.W.2d 159, 161 (Tex. App.–Corpus Christi 1986, no writ) (citing *Fox v. Am. Propane, Inc.*, 508 S.W.2d 426, 428 (Tex. Civ. App.–Austin 1974, writ ref'd n.r.e.)). Here, the judgment awards money damages to Garcia but fails to vest ownership of the Corvette in Charles Clark. The trial court erred in entering this judgment without a provision disposing of title to the Corvette in Charles Clark's favor. *See Fox*, 508 S.W.2d at 428. Charles Clark's fourth issue is therefore sustained.

11

## IV. CONCLUSION

The judgment of the trial court is affirmed insofar as it awards damages to Garcia for the fair market value of the Corvette reduced by the amount of money he received from his insurance carrier. However, we reverse the judgment to the extent it fails to dispose of title to the Corvette, and in light of the outstanding debt still owed by Garcia on the Corvette,[7] we remand for further proceedings to dispose of title to the car and, if necessary, adjust the money damages accordingly.

NELDA V. RODRIGUEZ
Justice

Delivered and filed the
8th day of April, 2010.

---

[7]*See Fox v. Am. Propane, Inc.*, 508 S.W.2d 426, 428-29 (Tex. Civ. App.–Austin 1974, writ ref'd n.r.e.) (reasoning that a plaintiff's recovery in conversion could potentially be limited by his equity of redemption because "while [a] wrongdoer is not allowed to profit from his own wrongdoing, the same rule should apply to the party allegedly aggrieved.").